ASA C. TEFFT, Appellant, *v.* ASA MUNSON et al., Respondents.

Where one having no title to lands executes a mortgage thereon with cove-
nants of seizin and of title, and afterward acquires title, it inures to the
benefit of the mortgagee, and the mortgagor and his privies in estate, in
blood and in law, are estopped from questioning that, at the date of the
mortgage, the mortgagor had title.

A record, therefore, of the mortgage, prior to the acquisition of title by
the mortgagor, is constructive notice to a subsequent purchaser in good
faith, and, under the recording act, gives it priority to his title.  (LOTT,
Ch. C., and REYNOLDS, C., dissenting.)

(Argued September 30, 1873;  decided January term, 1874.)

APPEAL from judgment of the General Term of the
Supreme Court in the third judicial department, affirming
a judgment in favor of defendants entered upon the decision
of the court upon trial at Special Term.

This was an action to restrain defendants, loan commis-
sioners for Washington county, from foreclosing a mortgage
executed to them by Martin B. Perkins and wife.

On the the 18th day of January, 1848, Gamaliel Perkins
purchased of Cortland Howland certain lands in Washing-
ton county, which were conveyed to him by warranty deed
recorded March 7, 1848, in the clerk's office in said county.
Gamaliel Perkins, immediately after his purchase, let his son,
Martin B. Perkins, into possession of the premises, who
forged a deed of the land from his father to himself and
placed it upon record in the clerk's office of said county,
May 27, 1850.  On the 1st day of October, 1850, Martin B.
and his wife executed a mortgage upon said land to the loan
commissioners of said county, to secure the sum of $1,000
loaned to him.  This mortgage contained covenants that
Martin B. and his wife were lawfully seized of a good, sure,
perfect, absolute and indefeasible estate of inheritance in the
premises, and that they were free and clear of and from all
former and other gifts, grants, bargains, sales, liens, etc.; and
this mortgage was, on the day of its date, duly recorded in

the book kept by the loan commissioners, as required by law. On the 23d day of January, 1860, a deed of said lands bearing date April 1, 1853, was recorded in the county clerk's office, which purported to be executed by Martin B. and wife to his father. On the 16th day of December, 1859, Gamaliel Perkins conveyed said land to Martin B., by deed recorded January 14, 1860. Until this conveyance from his father Martin B. had no title to the land, although he remained in possession of the same from 1848. On the 31st day of January, 1867, Martin B., being still in possession of the lands, conveyed them to the plaintiff, who paid full value for the same without any actual notice of the mortgage to the loan commissioners. The deed to the plaintiff was recorded February 9, 1867.

The court below decided that plaintiff was not entitled to the relief sought and directed a dismissal of the complaint. Judgment was perfected accordingly.

*S. Thomas* for the appellant. The mortgage was not a lien against plaintiff, unless he can be charged with notice of it, either actual or constructive. (R. S., 45, chap. 3, § 1 [5th ed.]; Laws 1837, chap. 150, § 43; *Frost* v. *Beekman*, 1 J. Ch., 300; 1 Story's Eq. Jur. [3d ed.], 396–412.) When the mortgage was recorded it was not a conveyance, and it did not become a conveyance until the mortgagor took title. (28 N. Y., 213; 4 Kent's Com. [3d ed.], 174; 1 Story's Eq. Jur. [3d ed.], § 404.) A purchaser has a right to rely on the record as showing the truth. (1 Story's Eq. Jur., § 403.) A mortgage recorded before the date of the mortgagor's title, is not notice to a subsequent purchaser. (*F. L. & T. Co.* v. *Malby*, 8 Paige, 361; *N. Y. L. Ins. Co.* v. *White*, 17 N. Y., 469; *Cook* v. *Travis*, 20 id., 400; *Doyle* v. *Purless Pet. Co.*, 44 Barb., 239; 1 Story's Eq. Jur., 396, 397 [3d ed.].)

*A. H. Tanner* for the respondents. The mortgagor having acquired title subsequent to the execution of the mortgage, is estopped from questioning the title he assumed to convey.

( *Vanderheyden* v. *Crandall,* 2 Den., 9 ; *Dennison* v. *Ely,* 1
Barb., 623 ; *McCrackin* v. *Wright,* 14 Jr., 194 ; *Jackson* v.
*Stevens,* 13 id., 316 ; 1 J. Cas., 90, and authorities there
cited ; *Bank of Utica* v. *Mersereau,* 3 Barb. Ch., 528 ; 7
Greenl., 96 ; 3 Pick., 52 ; 7 Conn., 214 ; 50 Ohio, 198 ; *Fisk*
v. *Potter,* 2 Keyes, 73.)   The recording acts do not apply to
this case.   (8 Bosw., 188 ; 6 Cow., 617 ; *Wood* v. *Chapin,* 13
N. Y., 509.)

EARL, C.   The plaintiff claims that the mortgage to the loan
commissioners has no validity as against him, and that his
deed has priority over it under the laws in reference to the
registry of deeds and mortgages.   It is a principle of law,
not now open to doubt, that, ordinarily, if one who has no
title to lands, nevertheless makes a deed of conveyance, with
warranty, and afterward himself purchases and receives the
title, the same will vest immediately in his grantee who holds
his deed with warranty as against such grantor by estoppel.
In such case the estoppel is held to bind the land, and to
create an estate and interest in it.   The grantor in such case,
being at the same time the warrantor of the title which he
has assumed the right to convey, will not, in a court of jus-
tice, be heard to set up a title in himself against his own
prior grant ; he will not be heard to say that he had not the
title at the date of the conveyance, or that it did not pass to
his grantee in virtue of his deed.   ( *Work* v. *Welland,* 13 N.
H., 389 ; *Kimball* v. *Blaisdell,* 5 id., 533 ; *Somes* v. *Skinner,*
3 Pick., 52 ; *The Bank of Utica* v. *Mersereau,* 3 Barb. Ch.,
528, 567 ; *Jackson* v. *Bull,* 1 John. Cas., 81, 90 ; *White* v. *Pat-
ten,* 24 Pick., 324 ; *Pike* v. *Galvin,* 29 Maine, 183.)   And the
doctrine, as will be seen by these authorities, is equally well
settled that the estoppel binds not only the parties, but all
privies in estate, privies in blood and privies in law ; and, in
such case, the title is treated as having been previously vested
in the grantor, and as having passed immediately upon the
execution of his deed, by way of estoppel.   In this case,
Martin B. Perkins conveyed the lands to the loan commis-

sioners, by mortgage with warranty of title, and thereby became estopped from disputing that, at the date of the mortgage, he had the title and conveyed it; and this estoppel applied equally to the plaintiff to whom he made a subsequent conveyance, by deed, after he obtained the title from his father, and who thus claimed to be his privy in estate. The plaintiff was estopped from denying that his grantor, Martin B. Perkins, had the title to the land at the date of the mortgage, and he must, therefore, for every purpose as against the plaintiff, be treated as having the title to the land at that date.

I, therefore, can see no difficulty in this case, growing out of the law as to the registry of conveyances. Martin B. Perkins, having title, made the mortgage which was duly recorded. He then conveyed to his father and the deed was recorded. His father then conveyed to him and the deed was recorded. He then conveyed to the plaintiff and his deed was recorded. Thus the title and record of the mortgage were prior to the title and record of the deed to plaintiff, and the priority claimed by plaintiff cannot be allowed, Assuming it to be the rule that the record of a conveyance made by one having no title, is, ordinarily, a nullity, and constructive notice to no one; the plaintiff cannot avail himself of this rule, as he is estopped from denying that the mortgagor had the title at the date of the mortgage. The case of *White* v. *Patten* (*supra*), is entirely analogous to this. In that case, the plaintiff derived his title from a mortgage, made to him by one Thayer, containing covenants of seizin, warranty, etc., and recorded February 19, 1834. At the time of the execution of this mortgage the title was not in Thayer, but in one Perry, his father in law. Perry afterward, by deed, recorded. August 2, 1834, conveyed the land in fee simple to Thayer, who conveyed the land by mortgage to the defendant, recorded the same day. The counsel for the defendant used the same arguments in a great measure, which have been urged upon our attention by the counsel for the plaintiff in this case, both as to the title and the registry of the mortgages; and, yet the

court held in a very able opinion, that the plaintiff had the prior and better title.

I am, therefore, of opinion that the judgment should be affirmed, with costs.

REYNOLDS, C. (dissenting). When Martin B. Perkins gave the mortgage to the loan commissioners he had possession, but no title to the mortgaged property. He had forged a deed of the premises from Gamaliel Perkins to himself, and caused it to be put on record in the clerk's office of the county of Washington; and by this device, imposed upon the loan commissioners. The forged deed, was, of course, a nullity, and could not in the eye of the law, have any effect by way of constructive notice or otherwise. It conveyed nothing, and was not a "conveyance" within the meaning of the recording acts, and did not affect the title to the land "in law or equity." It may be assumed, therefore, that the loan commissioners took the mortgage, knowing that Martin B. Perkins had no title, it being very clear that they acquired no legal rights by being imposed upon, against any one, save Martin B. Perkins. They got no interest in the land, either in law or equity. It is not in principle, unlike the case of a forged negotiable promissory note, where a *bona fide* holder for value can have no protection. It follows, therefore, that the entry of the mortgage in the books of the loan office at the time it was made, was of no legal consequence whatever, except as against the mortgagor. It was no notice under the recording acts, for it did not in the remotest degree affect the title to the land described in it. The mortgage contained a covenant of title, and it seems to be clear, that a title subsequently acquired by Martin B. Perkins, would, ordinarily, inure by estoppel, or otherwise, to the benefit of the mortgagees if other rights have not intervened. The title to the mortgaged premises was in Gamaliel Perkins, from the 18th of January, 1848, to the 16th of December, 1859, when he conveyed it to Martin B. Perkins. By this conveyance, the mortgage given by Martin B. Perkins to the

loan commissioners in October, 1850, acquired legal vitality by way of estoppel, or in some other form, and if it had then been in any proper form recorded, constructive notice of its existence, as a valid lien upon the property, would have been given to all the world. It is urged, that there was no necessity of making any further record of the mortgage, because the title in the mortgagees comes under the warranty by way of rebutter or estoppel. This will not do. It is sufficient, to say, that by virtue of the transactions under which the defendants look to enforce the lien of the mortgage, the title to the land is affected, and such a paper must be properly put on record to bind subsequent purchasers in good faith.

If this be not so, it is impossible to see how a subsequent *bona fide* purchaser can have any protection, and when it is said to be impossible to record the estoppel which gave the mortgage vitality, it may be answered: that, until the estoppel became operative, the mortgage was a nullity and the record of it no notice whatever. When, however, Martin B. Perkins obtained the title to the premises, it became by some operation of law valid against him; but it was of no greater force or effect, than if he had on that day given it to the loan commissioners. It then, for the first time, affected the title to the land, and in order to bind subsequent purchasers, in good faith, must be duly recorded, and this was not done in any such way as to operate as constructive notice under the recording acts.

It is not questioned, but that the plaintiff is to be protected as a *bona fide* purchaser, for value, unless the mortgage given in 1850, and then entered in proper order in the books of the loan office, which, at the time, did not affect the title to the land in any way, was constructive notice of the lien. It is well settled, that a conveyance that is not duly recorded according to law, even when the actual title has passed, is not effectual as constructive notice. (*Frost* v. *Beekman*, 1 John. Ch. R., 288; *Lessee of Heister* v. *Futner*, 2 Binney 40.) Much less can it be, that a conveyance which does not affect

the title, can give any legal notice whatever. In the very best aspect of the defendant's case, the record of the mortgage was made out of the order required .by law, and failed to give notice to anybody dealing with the title to the land. (*The N. Y. Life Ins. Co.* v. *White*, 17 N. Y., 469 ; *Sawyer* v. *Adams*, 8 Vt., 172.) In this view, the deed of the plaintiff was first recorded, and he is entitled to protection in his title.

The judgment should be reversed, with costs, the mortgage declared no lien upon the land of the plaintiff, and the loan commissioners perpetually enjoined from attempting to enforce it.

For affirmance, EARL, GRAY and JOHNSON, CC.

For reversal, LOTT, Ch. C., and REYNOLDS, C.

Judgment affirmed.