[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 110 
The children of John Jackson, living when the deed from Stephen Jackson to John Jackson was executed, took thereunder a vested remainder in the premises embraced therein, dependent upon the life estate of John Jackson, the father. But this interest was liable to be curtailed by the birth of other children of John Jackson, as such after-born children would be entitled to share in the remainder; and the interest of each child was subject to the further contingency that it might be wholly defeated by his death, leaving issue, before the death of John Jackson; in which case the issue would take the share of the deceased parent, under the deed of Stephen Jackson, as purchasers, and not by descent. (Moore v. Littel, 41 N.Y., 66.) By the subsequent conveyance from John Jackson to his eleven surviving children, the estate for life and in remainder became vested in the same persons. But there was not, by reason of the unity of title, a merger of the two estates. The estate in remainder continued subject to the same contingencies which had before affected it. No absolute title to the property could be acquired during the life of John Jackson. Until his death his heirs, to whom the estate in remainder was limited, could not be ascertained; meanwhile, as this court has held, the remainder vested in these persons who would answer the description of heirs in case the precedent estate had presently determined.
The conveyance to Parmenus and Edward Jackson of the lot in question in this action, by the other children of John Jackson, in pursuance of the voluntary partition made between the children in 1848, vested in them a defeasible *Page 112 
title only; and it was this title that was covered by the mortgage from Parmenus and Edward Jackson to William Beard, dated May 1, 1848, acknowledged and recorded September 4, 1849. The mortgage contained no covenants, nor did its purport to cover any interest not then existing in the mortgagors. When the mortgage was foreclosed, in 1851, the purchaser acquired the title which the mortgagors had when the mortgage was executed. The mortgage debt was paid out of the proceeds of the sale, or if insufficient for that purpose, a judgment was, or might have been, rendered against the mortgagors for the deficiency. The relation of mortgagor and mortgagee between the parties to the instrument was extinguished by the sale, and the mortgagors were thereafter under no duty to protect the title of the purchaser, nor were they precluded from subsequently acquiring an outstanding and paramount title to the premises.
It may be conceded that when it is the intention of the parties to a mortgage, disclosed by the instrument, to subject the entire fee to the lien of the mortgage, any subsequently acquired title of the mortgagor will be bound by the mortgage, and will pass to a purchaser on the foreclosure. While the relation of mortgagor and mortgagee is subsisting, the acquisition of a hostile title by the mortgagor would be inconsistent with that relation; and it may well be held that any new interest in the mortgagor would inure to strengthen the security of the mortgage. But when a mortgage has been foreclosed, containing no covenants of warranty, I know of no principle upon which it can be held that a title subsequently acquired by the mortgagor will pass to the purchaser on the foreclosure. The purchaser is presumed to know the condition of the title which he purchases, and if it is defective his bid is regulated in view of such defect. If the premises bring enough to satisfy the mortgage debt it would be inequitable to allow him to claim an interest subsequently acquired by the mortgagor, and which he did not purchase and was no part of the consideration of the sale. If there is a deficiency, that becomes a personal *Page 113 
charge against the party bound to pay the debt, in favor of the creditor. Different considerations would apply when the mortgage contained covenants of warranty. In that case the consideration paid would represent the value of the land as warranted, and the mortgagor would be estopped from setting up an after acquired title, against which he covenanted in the mortgage.
Upon the death of John Jackson, in 1861, Fanning Baldwin, the son of Fanny Baldwin, one of the children of John Jackson, who died in 1859, became seized of an estate in fee in the undivided one-eleventh part of the premises embraced in the deed from Stephen Jackson to John Jackson. Fanning Baldwin was not bound by the voluntary partition made between his mother and the other children of John Jackson, in 1848: and his title to the one-eleventh part of the lot conveyed under that partition to Parmenus and Edward Jackson, which was mortgaged by them to Beard, was unaffected either by that partition or by the foreclosure of the mortgage. He could assert the title himself or could convey it to another. The power of disposition on his part was perfect; and if he had conveyed his interest in the lot in question to Parmenus Jackson, the latter would have acquired a good title, which he could enforce against all persons, including the purchaser on the foreclosure of the Beard mortgage or his grantees, unless he was estopped by his mortgage from claiming the land, in hostility to the title under the foreclosure. By the judgment in the partition suit between the heirs of John Jackson, commenced in 1862, the lot in question in this action was set off in severalty to Parmenus Jackson; he thereby acquired the interest of Fanning Baldwin therein, and stands in respect to that interest as his grantee. Assuming that Fanning Baldwin might have elected to confirm the voluntary partition made in 1848, and to take the share alotted to his mother in that proceeding, in lieu of any other interest in the property, it does not appear that he did so. So far as the case shows, the voluntary partition was not alluded to in the partition suit; and the fact that the lot in *Page 114 
question was set off to Parmenus Jackson alone and not to Parmenus and Edward Jackson, to whom it was conveyed under the partition in 1848, unexplained, tends to support the conclusion that the partition suit was not instituted for the purpose of confirming the prior proceedings.
Upon the case as presented, Parmenus Jackson is to be regarded as having acquired, under the judgment in partition, the title of Fanning Baldwin to the undivided eleventh part of the lot in question; and this new title did not, for the reasons stated, inure to the benefit of the defendant, who holds under the title acquired on the foreclosure of the Beard mortgage. Beard, the mortgagee, was the purchaser on the foreclosure, but his position in respect to the question considered is the same as if he had been a stranger to the mortgage. He held the title, after the sale, as owner and not as mortgagee; that relation had terminated, and the plaintiff being out of possession, can claim, under his title from Fanning Baldwin, against Beard or his grantee.
Nor do I perceive that there are any equities growing out of the covenants in the partition deeds which are available to the defendant to prevent the plaintiff from asserting his title to one-eleventh part of the premises. If the defendant is compelled to yield to the plaintiff's claim, there may, perhaps, be a remedy in an action on the covenants of the grantors in the deed to Parmenus and Edward Jackson. But they in turn will be liable to the grantees of the premises warranted by them; and it is quite probable that the benefit of those covenants has been transferred with the estate warranted to the grantees of the parties with whom they were originally made. If the plaintiff should be concluded from asserting any title to the lot in question, it would not relieve him from his liability on his covenants in the deeds to the other children of John Jackson.
Upon the whole case, I am of opinion that the judgment should be reversed and a new trial granted, with costs to abide the event.
All concur; GROVER, J., in result. Judgment reversed. *Page 115