(98 App. Div. 187)

## SHARMAN v. JACKSON.

(Supreme Court, Appellate Division, Second Department. November 18, 1904.)

1. TRUSTS—CONSTRUCTION OF DEED—TERMINATION.

The real property law (Laws 1896, p. 574, c. 547, § 89) provides that, when the purpose for which an express trust is created ceases, the estate of the trustee shall also cease. Plaintiff, in contemplation of marriage, executed a deed creating a trust, and reciting that it was desired that the property involved be placed in trust, so that it should not be subject to the disposal of either plaintiff or her intended husband during marriage; that all the profits should be paid to the plaintiff, and on her death the property transferred to such persons as she might designate by will. The deed contained no power of revocation, and the husband died before plaintiff; there being no issue of the marriage. Held, that plaintiff was entitled to an adjudication terminating the trust.

Suit by Sophia R. Sharman against Edward Jackson, individually and as trustee under a deed of trust, to obtain an adjudication terminating a trust. Submitted on agreed statement. Judgment for plaintiff.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Hampton D. Ewing, for plaintiff.

Artemas Ward, Jr. (Henry G. Ward and Roderick Terry, Jr., on the brief), for defendant.

HIRSCHBERG, P. J. The plaintiff asks for an adjudication terminating a trust created by her by deed on October 3, 1873, in the nature of a marriage settlement. The contract was executed by her and her intended husband, and by the defendant as trustee. The marriage took place the next day, and has been without issue. The plaintiff's husband died on November 5, 1899. No child was ever born to the plaintiff. The property of the trust was stocks, bonds, and other securities belonging to the plaintiff; and the deed recited that, in contemplation of the marriage, it was the desire of the parties that the property should be placed in trust and settled and secured in such manner that it should not be subject to the disposal of either "during said marriage"; that it should not be

come liable for any debts contracted by the husband; and that he should have no interest whatever, either in law or in equity in the property, either principal or income. By the terms of the trust, the rents, interest, income, and dividends of the property were to be devoted to the exclusive use of the party of the first part, and on her death the whole property was to be transferred to such person or persons as she might appoint by will, and, in default of such direction, to her heirs and next of kin. The deed contains no power of revocation.

No definite period is designated in the deed for the continuance of the plaintiff's use of the income, other than the recital that the property placed in trust should not be subject to her disposal during the marriage; and as her husband in no event took any right or interest in the property, and no express provision was made even for possible issue, I am of opinion that the trust was intended to continue only during coverture, and that it ceased with the termination of the marriage. No rights of any kind have intervened, and no reason is or can be suggested why the plaintiff should not now have the custody and control of her property.

The real property law (chapter 547, p. 574, Laws 1896) provides as follows:

"Sec. 89. When Estate of Trustee Ceases. When the purpose for which an express trust is created ceases, the estate of the trustee shall also cease."

In Perry on Trusts, vol. 1, § 104, it is said that:

"Where the trust does not break the natural course of descent of the property, and is not needed for the protection of the life cestui, who is the grantor, equity will, on application of the cestui, terminate the trust and decree a conveyance."

The author cites in support of the tenet the case of Nightingale v. Nightingale, 13 R. I. 113, where the trust was made by a woman before marriage for herself for life, with remainder to her appointees by will, or her heirs at law, if she died intestate. After marriage and during coverture she applied for a conveyance and discharge of the trust, and, as the natural descent was not broken, and the laws of the state sufficiently protected married women, the request was granted.

McFarland's Appeal (Pa.) 4 Atl. 348, presents a case very similar to this one. The settlor made a deed of trust the day before her marriage, by the terms of which she reserved the exclusive use of the income for life, with the power of appointment by will, in default of which the property was to go to her heirs under the intestate law. On the death of her husband it was held that she was entitled to have the trust revoked. The court of common pleas said (page 349):

"The trust in this case was, as the master finds, for coverture. The deed was executed by the beneficiary on the day before her marriage, and in immediate contemplation of the event. The property put in trust belonged to her in her own right. By the terms of the deed, the profits were, 'under all circumstances,' to go to her for life, for her 'exclusive use.' She gave herself the power of appointment by will, and, in default of such appointment, the principal to go to such persons as would be her heirs under the intestate laws.

She gave no one any interest in the estate put in trust but herself, and those who might be her heirs. Under the authorities bearing on the subject of such trusts, this trust ended when the grantor became discovert. Megargee v. Naglee, 64 Pa. 216; Yarnall's Appeal, 70 Pa. 335; Ogden's Appeal, Id. 501; Tucker's Appeal, 75 Pa. 354; Williams' Appeals, 83 Pa. 390. The coverture being the only purpose of the settlement, and being ended by the death of the husband, and she being sui juris, and no persons yet entitled as heirs, there is no reason to perpetuate the trust, and it should fall at her own instance. Courts of equity will relieve from a voluntary and self-imposed trust without consideration, where its purpose has been fulfilled, and there is no other reason to preserve it."

The decree revoking the trust was affirmed on appeal.

To the same effect are Rogers v. Cunningham, 51 Ga. 40; Wilkinson v. Gibson, L. R. 4 Eq. Cas. 162; Swift v. Wenman, L. R. 10, Eq. Cas. 15; and Fussell v. Dowding, L. R. 14 Eq. Cas. 421.

The marriage settlement in Borland v. Welch, 162 N. Y. 104, 56 N. E. 556, was essentially different, in that the settlor there made provision for a possible subsequent or second marriage. The court said (page 108, 162 N. Y., page 557, 56 N. E.):

"The reference to a subsequent marriage doubtless shows that the trust was not to terminate by the death of the husband prior to that of the wife."

The court fully recognized, however, that the main object of antenuptial settlements was to avoid the husband's control of the property during coverture, saying:.

"That the courts have been entirely right in the view that the dominant object of the settlement of the wife's property by antenuptial agreement was to avoid the husband's marital rights given by the common law, and to save it from the claims of his creditors, is manifest from the fact that since the enactment of the married women's statutes such settlements have become, if not obsolete, extremely rare, in this state."

In this case it seems clear that the purpose of the settlement was only to tie up the principal during the contemplated marriage, and that the intention of the parties was to terminate the trust on the death of the husband during the life of the wife; and it follows that the plaintiff is entitled to judgment as prayed for.

Judgment directed for plaintiff in accordance with the terms of the submission, without costs. All concur.