GILLIAM v. GUARANTY TRUST CO. et al.

(Supreme Court, Appellate Division, First Department. March 9, 1906.)

DEED—CONSTRUCTION—REMAINDER—"HEIRS AT LAW."

A deed of trust gave certain property to D. for life, "and after her decease to her heirs at law." Some years thereafter D. adopted a child under the statute, which child by a subsequent statute was entitled to inherit from D. *Held*, that the heirs at law of D. at the time of her death, and not her heirs at the time of the execution of the deed, were entitled to the remainder; so that the adopted child inherited, and not the brothers and sisters of D., who were her heirs at the time of the execution of the deed.

Patterson and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Anna T. Gilliam against the Guaranty Trust Company of New York and others. From a final judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

John R. Abney (John M. Harrington, on the brief), for appellant.
John D. Henderson, for respondents Dyett.

CLARKE, J. On April 27, 1853, Eliza Hunt conveyed certain real property to Andrew Findlay, "in trust for the use and benefit of Frances J. Dyett during her natural life, and after her decease to her heirs at law," by deed which impowered said trustee to sell the land so conveyed, and reinvest the money received in other securities; and provided that:

"If a sale should be made of said land, the money or proceeds of said sale shall, until reinvested again, be considered as land, and held in trust for the benefit of said Frances during her life, and after her decease to her heirs at law."

Said Findlay died in 1892, and the defendant Guaranty Trust Company of New York was appointed substituted trustee. Frances J. Dyett, the beneficiary under said trust deed, intermarried with Francis H. Thomas. Mr. Thomas died in 1888. Mrs. Thomas died on February 24, 1905. She left, her surviving, no issue and no descendant. Upon her death the trust created by said deed ceased. On December 6, 1883, under and in pursuance of the provisions of chapter 830, p. 1243, of the Laws of 1873, Mr. and Mrs. Thomas duly adopted plaintiff, then an infant, as and for their own lawful child, and an order in that regard was duly made at chambers of the County Court of Oneida county, and from and after said day Mr. and Mrs. Thomas until their respective deaths and the plaintiff sustained toward each other the mutually acknowledged relation of parent and child. The defendants James S. Dyett, Thomas H. Dyett, and George H. Dyett are surviving brothers of said Frances J. Thomas, deceased. The question in the case is, the trust having ceased by the death of the life beneficiary, did the estate upon her death, under the terms of the deed, devolve upon her legally adopted child, the plaintiff, or upon her three living brothers? At the time of her death, under the terms of said deed, who were her "heirs

at law?" The plaintiff claims that the deed should be construed as of the time when the trust determined by the death of the life-beneficiary, and that, as at that time she was entitled to inherit the estate of her adopted mother, she was her heir at law. The defendants claim that the deed should be construed as of the time when the deed was executed and delivered, and that, as at that time the law did not authorize the adoption of children, they are the sole heirs at law of their sister, and entitled to take the whole estate. Twenty years after the execution of the deed, chapter 830, p. 1243, of the Laws of 1873, entitled "An act to legalize the adoption of minor children by adult persons," was passed, providing that the adopting parent and the adopted child should sustain toward each other the relation of parent and child, and have all the rights of that relation excepting the right of inheritance. Ten years thereafter, December 6, 1883, the plaintiff was lawfully adopted. Chapter 830, p. 1243, of the Laws of 1873, was amended by chapter 703, p. 909, § 10, of the Laws of 1887, by providing that the adopting parent and the adopted child should sustain toward each other the relation of parent and child, including the right of inheritance, except that, as respects the passing and limitation over of real and personal property under and by deeds, wills, devises, and trusts, dependent upon the person adopting dying without heirs, said adopted child shall not be deemed to sustain the legal relation of child to the person so adopting, so as to defeat the rights of remaindermen. The exception does not apply to the case at bar. The defendants Dyett do not claim as remaindermen under a deed providing for the passing and limitation over of real property, dependent upon the person adopting dying without heirs. They claim under the deed which provides for the passing of the estate to the heirs at law, and that they are such heirs. Chapter 272, p. 225, of the Laws of 1896 (the domestic relation law) provides in section 60 that:

"Nothing in this article in regard to an adopted child inheriting from the foster parent applies to any will, devise or trust made or created before June 25th, 1873, or alters, changes or interferes with such will, devise, or trust, and as to any such will, devise or trust, a child adopted before that date is not an heir so as to alter estates or trusts or devises in wills so made or created."

It seems sufficient to say that neither a will nor a devise is here under consideration, nor is a trust. The trust has run its appointed course, unaffected and untouched. That it has ceased and determined is the very reason for this litigation. Further, this child was not adopted before June 25, 1873. Chapter 408, p. 333, of the Laws of 1897, amending the domestic relation law (section 64), provides that:

"The foster parent or parents and the minor sustain toward each other the legal relation of parent and child, and have all the rights, and are subject to all the duties of that relation including the right of inheritance from each other * * * and such right of inheritance extends to the heirs and next of kin of the minor, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting, but as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the minor is not deemed the child of the foster parent so as to defeat the rights of the remaindermen."

Section 60 of the domestic relations law (chapter 272, p. 225, Laws 1896) also provides that:

"Proof of the lawful adoption of a minor heretofore made may be received in evidence, and any such adoption shall not be abrogated by the enactment of this chapter and shall have the effect of an adoption hereunder."

The defendants concede that, under these various provisions, the plaintiff would be entitled to take by inheritance or succession the estate of her foster mother; that, so far as there may be accumulation of income from the trust estate, she is entitled thereto. They insist, however, that this estate is not the estate of Mrs. Thomas, devolving by inheritance, but the estate of Eliza Hunt, transmitted by deed, which is to be interpreted as of the time of execution. Their contention is stated as follows:

"By the terms of the deed of Eliza Hunt, the then heirs at law of the cestui que trust took a vested remainder in the said trust estate, and, her father being dead, her three brothers, the defendants Dyett, were then such heirs at law, liable, however, to be divested by the birth of a child."

There is nothing in this record to show that at the time of the making of the deed the father of the cestui que trust was dead, or that the defendants were then her heirs at law. The statute of descent (1 Rev. St. [1st Ed.] 751 pt. 2, c. 2, § 1) at that time provided that:

"The real estate of every person who shall die without devising the same, shall descend in manner following: 1. To his lineal descendants. 2. To his father. 3. To his mother and 4. To his collateral relatives, subject in all cases to the rules and regulations hereinafter prescribed."

And then follow many rules governing various contingencies and varying degrees of consanguinity. The cestui que trust was at that time an unmarried girl. Her heirs could only be known at the time of her death, which, as matter of fact, occurred 52 years thereafter. If we look at the nature of the instrument and the situation of the parties, if we look at the intention, can it be doubted, in view of all the possible contingencies that might arise, that the grantor, when she used the words "after her decease to her heirs at law," had in mind the obvious natural meaning, viz., those persons who at the time of her death should be declared by the law then existing to be her heirs at law? There can be no heirs of a living person. "The legal and well-understood meaning of the word 'heir' is the one upon whom is cast an estate of inheritance upon the death of the owner, and it follows that this person is uncertain until death occurs; for until that event it can never be known to whom the estate will fall." Heath v. Hewett, 127 N. Y. at page 171, 27 N. E. at page 960 (13 L. R. A. 46, 24 Am. St. Rep. 438). If we assume, what does not appear, that at the time of the execution of this deed these three defendants would have been the heirs of the cestui que trust if her death had presently occurred, their right to take upon that event was undoubtedly subject to be divested by her marriage and the birth of a child. The share of each one was liable to be divested by his death before the cestui que trust. Consequently, their whole estate, whatever it was, was liable to be divested by the death of all three before Frances Dyett's death. That such an estate is not devisable, descendible, or alienable is settled. In Dougherty v. Thompson, 167 N. Y., at page 487, 60 N. E., at page 764, Judge Landon said:

"Moore v. Littel, 41 N. Y. 66, is a leading authority, although it has been criticised upon common-law lines. It is to the effect that a remainder limited to the heirs of A. Upon the determination of a life estate in A. is vested in his lifetime in his living children, although (and this is the point of the criticism) A.'s heirs cannot be ascertained until his death. But the case also holds that the death of any child in his father's lifetime defeats his interest and divests the remainder; the effect of the statute being to abolish the common-law condition precedent to the vesting of the remainder—namely, the child's survivorship of his father—and to substitute for it a condition subsequent, which may divest and defeat the remainder after it is vested—namely, the child's death in his father's lifetime. It was held in subsequent cases, founded upon the same title, that the deed of a child who predeceased his father conveyed no part of the remainder. Jackson v. Littell, 56 N. Y. 108; House v. McCormick, 57 N. Y. 310; House v. Jackson, 50 N. Y. 161. Thus a remainder vests subject to be divested, if such is its tenure, and, the condition subsequently occurring upon which the divesting depends, the remainder is thereby divested."

Said Mr. Justice Rumsey in Paget v. Melcher, 26 App. Div., at page 17, 49 N. Y. Supp., at page 924, said opinion being approved by the Court of Appeals (156 N. Y. 404, 51 N. E. 25):

"The deed, then, is to be construed in accordance with the rule that where final distribution is to be made among a class, the benefits must be confined to those persons who constitute the class at the time when the division is directed to be made. It is not necessary to consider the precise nature of the interest taken by the members of the class before the time for division arises. Whether the remainder be contingent, or a vested remainder in those persons who shall constitute the class at any given time, subject to be divested by the death of any one of those persons before the time of distribution arises, is a matter of no particular importance. It is sufficient for the purposes of this case to say that the general rule is well established that the property when divided is to go to those persons who shall compose the class at the time when the division is to be made."

So that whatever this right of these defendants may be called—vested, subject to be divested, or contingent—it was liable to be defeated if at the death of the cestui que trust they were not then her heirs. Their rights depended upon the statute of descent. Under certain contingencies, they would be the heirs at law. That right was subject to be destroyed by the birth of lineal descendants, who, under the same statute, would then oust them. That statute was subject to amendment. It must be assumed that the grantor knew the law, and that when she said, "after her decease to her heirs at law," she said it knowing that the Legislature had the power to declare who the heirs at law were. The statute was amended by providing that adopted children should inherit, and, as this was an amendment, in effect, of the same statute under which defendants claim (Dodin v. Dodin, 16 App. Div. 42, 44 N. Y. Supp. 800; Kemp v. N. Y. Produce Exchange, 34 App. Div. 175, 54 N. Y. Supp. 678), it seems to me their right was destroyed or divested by the adoption of a child, as it would have been by the birth of a child.

In the Kemp Case, supra, Mr. Justice Cullen said:

"On the death of the testator or the delivery of the deed, the rights of the remaindermen would vest, and those rights could not be divested by subsequent legislation; though, even in such cases, if the will or deed showed an intent that the distribution should be governed by the laws that might exist at some future time provided for the distribution of the fund, effect would unquestionably be given to it."

In Kohler's Estate, 199 Pa. 455, 49 Atl. 286, it appeared that by
will dated October 11, 1853, testator gave part of his estate in trust
for his son for life, with remainder to "such person or persons as
would be entitled thereto if my said son had survived his wife, and died
intestate and possessed thereof, and in such share and proportions as,
such person or persons would in such case be entitled by law." And
the court said:

"The learned judge below very forcibly said: 'The will of John Kohler,
father of the cestui que trust, was written thirty-six years before the decree of
adoption, and that event, therefore, was not reasonably within the contempla-
tion of the testator. But, as he gave the estate to those persons to whom the
law would give it in case of intestacy, he cannot be said to have had any
particular class of heirs or next of kin in view, and he committed the question
of determining who should take to the law itself.' And it is only necessary to
add that a testator who commits the distribution of his estate to the law,
upon the happening of an event necessarily future, must reasonably be pre-
sumed to have contemplated the possibility of a change in the law in the
meantime."

In Randall v. Krieger, 23 Wall. 137, 23 L. Ed. 124, in speaking of
dower, the United States Supreme Court said:

"It is wholly given by law, and the power that gave it may increase, diminish,
or otherwise alter it, or wholly take it away. It is upon the same footing with
the expectancy of heirs apparent or presumptive before the death of their an-
cestor. Until that event occurs, the law of descent and distribution may be
moulded according to the will of the Legislature."

In McGillis v. McGillis, 11 App. Div. 359, 42 N. Y. Supp. 921; Id.,
154 N. Y. 532, 49 N. E. 145, testator left a life estate to his daughter,
and "from and after the decease to the lawful issue of my said daughter
then living, in such relative proportions as they would by the laws of
the state of New York have then inherited * * * in case she
had died intestate." At the time of the death of her father, Mrs. Mc-
Gillis had four children, who were aliens. After the death of testator
she had four more children who were entitled to take. She died
leaving six children, three born before the death of testator, three
afterwards, and one grandchild. Legislation subsequent to the
death of testator permitted the aliens to take. In the Appellate Divi-
sion Mr. Justice Landon said:

"The argument against the power of the Legislature to qualify the four first-
born children of Mrs. McGillis to take the devise of the testator rests upon the
assumption that title to the ultimate possession of the remainder absolutely
vested either in the heirs of the testator or in the after-born children of Mrs.
McGillis. But this argument wholly fails when we see that such vesting was
not of the absolute right to the ultimate possession of the remainder, but of a
contingent right to it; the contingencies inhering in the right as created by the
testator, and only absolutely to be put at rest by the death of Mrs. McGillis.
Then those who were within the class designated by the testator became vested
of the remainder in possession, and until then all the issue of Mrs. McGillis
were eligible to enter the class; the after-born by birth within it, the prior-born.
by the enabling qualification of the statute."

In the Court of Appeals Judge Haight said:

"The pivotal question in the case arises upon the construction which should
be given to the provisions of the will, and is as to whether the remainder
after the death of the testator was vested or contingent. * * * All the
children of Mrs. McGillis in being at the time of the death of the testator were
aliens. They consequently could not take under the will, and there could be

no vesting of the remainder in them. If there was any vesting of the remainder, it necessarily must have been in the heirs at law. * * * He not only gives to the issue then living, but he leaves the proportion or share which each is to take to be determined by the laws of the state which shall be in force at the death of his daughter and her husband, providing for its distribution under such laws in the proportion in which it would descend upon the assumption that his daughter was at that time the owner of the property in fee simple. It was not known at the time of the testator's decease which would survive the other—the daughter or her husband. It was not known, and could not then be ascertained, what person or persons would be then living, if any, of the lawful issue. It consequently follows that the person to whom, or the event upon which, the estate was limited to take effect was uncertain, and therefore the remainder was contingent. If the remainder was contingent, the heirs at law took no interest in the estate upon the death of the testator. It could not then be determined who the heirs at law would be, or what provisions of the statute would be in the meantime adopted. * * * Upon the death of Mrs. McGillis, the persons who are entitled to take the estate in possession became fixed and certain. In the meantime, our statutes had been changed. * * * It, in effect, amends the provisions of the Revised Statutes making void a devise to a person who at the time of the death of the testator shall be an alien, so that the provisions of that statute no longer apply to the foreign born children of married women born in this country. Under the statute existing at the time of the death of Mrs. McGillis, the estate if it had been hers and she had died intestate, would have descended to her children."

In the recent cases of Richards v. Hartshorne and the Rahway Library Association (decided by this court November, 1905), 97 N. Y. Supp. 754, a life estate in trust was devised, with remainder over to the Rahway Library Association upon failure of issue of the cestuis que trustent. At the time of the death of testator, the library association, being a foreign corporation, was unable to take by devise under our laws. Prior to the death of the life tenant, an act was passed by the Legislature permitting such association to take and hold for five years. The claim was made that on the death of testator his heirs became vested with the remainder, subject to be divested by birth of issue of the life tenants, and that such vested remainder could not be affected by subsequent legislation conferring upon the library the power to take. This court, by Presiding Justice O'Brien, said: "The real issue to be determined, therefore, is whether the remainder was vested or contingent. The court at Special Term held that it was the former, but we do not agree with this conclusion" and gave judgment for the library.

There is no difference in principle. The courts have always had in mind the intention of the testator or grantor. The defendants here were not remaindermen by name in the deed. They have none of the attributes of personal selection as ultimate beneficiaries. Grantor looked not to individuals, but to a class, "after her decease to her heirs at law." It is conceded, as it must be under the authority of Dodin v. Dodin, 16 App. Div. 42, 44 N. Y. Supp. 800, affirmed 162 N. Y. 635, 57 N. E. 1108, Kemp v. N. Y. Produce Exchange, 34 App. Div. 175, 54 N. Y. Supp. 678, and Theobald v. Smith, 103 App. Div. 200, 92 N. Y. Supp. 1019, that as to Mrs. Thomas' own estate the plaintiff has the right to inherit. Possession of the right to inherit by law constitutes the possessor of such right the heir at law. As it appears from the foregoing discussion that the words "after her decease to her heirs at law"—not the heirs at law of the grantor, but of the cestui que trust—

must be taken to mean the heirs so constituted by law at the decease of the cestui que trust, it follows that the plaintiff is such heir at law. The defendants' rights were contingent on their being the heirs at said time. That contingency having failed, the complaint states facts sufficient to constitute a cause of action, the demurrer was improperly sustained, and the judgment should be reversed, with costs in this court and in the court below, with leave to the defendants to withdraw the demurrer, and plead over within 20 days upon payment of such costs.

O'BRIEN, P. J., and INGRAHAM, J., concur.

PATTERSON, J. Accepting the statement of facts as they are narrated in the prevailing opinion in this cause, I am unable to concur in the conclusion at which the majority of my Brethren have arrived that the interlocutory judgment should be reversed. I think there are vested remainders in the surviving brothers of Mrs. Frances J. Thomas (Dyett), but, as that seems to be debatable, I prefer to place my dissent upon the ground that the statutes relating to adopted children do not apply to the trust deed made and delivered by Eliza Hunt, the grantor or creator of the trust, in 1853. The terms of that trust are specifically for the use and benefit of Frances J. Thomas (Dyett) during her natural life, and after her decease the trust property to pass to her heirs at law. When the instrument was made and delivered, adoption of children, with consequent rights of inheritance in them, was unknown to the law of New York. Re Thorne, 155 N. Y. 141, 49 N. E. 661; Smith v. Allen, 161 N. Y. 482, 55 N. E. 1056. The first statute relating to adoption was passed in this state in 1873, 20 years after the deed in question was made. Its sole purpose was to establish a mutual relation of parent and child between the person adopting and the one adopted, but rights of inheritance were specifically excluded. Subsequent statutes in pari materia will be hereinafter referred to. This plaintiff was adopted in 1883. It seems to me that, in construing the trust deed, we must have regard to the intention of the testator at the time it was executed and the trust created. The words "heirs at law" at that time had a definite legal meaning. They then meant kindred by blood, and no others. They did not relate to a stranger to the blood, family, and kindred, made an heir by a legal proceeding, which the creator of the trust could never have imagined nor anticipated. "The word 'heir,' in legal understanding, signifies him to whom lands, tenements, or hereditaments, by act of God and right of blood, descend of some estate of inheritance." Broom's Legal Maxims (5th Ed.) 515; 3 Wash. Real Prop. 6. "The word 'heirs' is a legal term, having a definite meaning, and expresses the relation of persons to a deceased ancestor and not to a living." Cushman v. Horton, 59 N. Y. 151. "The primary meaning in the law of the word 'heirs' is the persons related to one by blood, who would take his real estate if he died intestate, and the word embraces no one not thus related." Tillman v. Davis, 95 N. Y. 24, 47 Am. Rep. 1. Such was the meaning of the words in this trust deed when the trust was created, and a testator (and so of a grantor) is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless from

the context of the instrument it appears that he has used them in a different sense. Luce v. Dunham, 69 N. Y. 39; Tillman v. Davis, 95 N. Y. 24, 47 Am. Rep. 1; Murdock v. Ward, 67 N. Y. 389; Keteltas v. Keteltas, 72 N. Y. 312, 28 Am. Rep. 155; Cushman v. Horton, 59 N. Y. 149.

If my understanding of the intention of the creator of the trust is correct, then it is evident that she had in contemplation that kindred in blood of the beneficiary—those who would be such at the death of the beneficiary—were to take the interest in remainder after the expiration of the trustee's estate. Upon an examination of the statutes passed after 1873 relating to the subject of the adoption of children, I am of the opinion that the intention of the creator of the trust is not to be thwarted or defeated. It must be conceded that, so far as succession to the property, real and personal, of the adopting parent is concerned, the adopted child sustains the relation of heir, and that such relation, with its incidents, is established as of the time of the death of the parent, and not in accordance with the law as it existed at the time of the adoption; so that if at the time of the adoption the statute did not confer the right of inheritance, but did at the time of the death of the parent, the adopted child would take. Theobald v. Smith, 103 App. Div. 200, 92 N. Y. Supp. 1019; Dodin v. Dodin, 16 App. Div. 45, 44 N. Y. Supp. 800, affirmed 162 N. Y. 635, 57 N. E. 1108.

We have seen that by the statute of 1873 the right of inheritance was not given to the adopted child. In 1887, by chapter 703, p. 909, of the Laws of that year, the act of 1873 was amended, and the relation of parent and child was constituted, including the right of inheritance, except that as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs the adopted child is not deemed the child of the foster parent, so as to defeat the rights of remaindermen. It is a fair construction of this statute that its intent was to give the adopted child rights in property passing under deeds, wills, devises, and trusts, except in the particular instances where the passing or limitation over of the property was dependent upon the person dying without heirs. But in 1896 a change was again made in the law. Laws 1896, c. 272, p. 225, § 60. By that section it is provided as follows:

"Nothing in this article in regard to the adopted child inheriting from the foster parent, applies to any will, devise or trust made or created before June 25th, 1873, or alters, changes, or interferes with such will, devise or trust, and as to any such will, devise or trust, a child adopted before that date is not an heir so as to alter estates or trusts, or devises in wills so made or created."

The effect of section 60 is, so far as it relates to trusts of property created before the year 1873, to put an adopted child back in the same position it would have occupied under the act of 1873, namely, to deny to it the right of inheritance as to such property. I cannot assent to the proposition that section 60 is inapplicable here, because the trust ceased at the death of the beneficiary. When the trust ceased, whoever was entitled to the remainder would take under the trust deed, and would not take from the beneficiary. Sharman v. Jackson, 98 App. Div. 187, 90 N. Y. Supp. 469, is authority only for the proposition that the trust ceased on the death of Mrs. Thomas (Dyett). I think one of

the purposes of section 60 was to prevent an adopted child, as heir of the adopting parent, from taking property, "so as to alter estates or trusts or devises" made or created prior to 1873. It seems to me that allowing the plaintiff to take realty as an heir at law of the beneficiary of the trust would radically change the provisions of the trust deed, if I am right in the interpretation given to the words "heirs at law" in that trust deed, as evincing the intention of the testator at the time the trust was created. I think the statutes of adoption should not be construed so as to defeat the intention of the creator of a trust, and divert his property from that line of succession in which he declared it should go, and bestow it upon absolute strangers, whom he never intended to be the recipients of his bounty.

The judgment should be affirmed, wtih costs.

LAUGHLIN, J., concurs.