ALMIRA GRAY, Plaintiff, *v.* HENRY F. DELPHO, JR., ANSON G. GLOYES, NELLIS, AMOS & SWIFT et al., Defendants.

(Supreme Court, Oneida Equity Term, July, 1916.)*

Mortgages — assignment of — who bona fide purchaser — title — meaning of " purchaser " — Real Property Law, §§ 290, 291.

The assignee of a mortgage holds it subject to the same equities and defenses as can be interposed against his assignor.

The assignee of a mortgage is a " purchaser " within the meaning of the recording act (Real Property Law, §§ 290, 291), which declares that every unrecorded conveyance of real property shall be void as against " any subsequent purchaser in good faith and for a valuable consideration whose conveyance is first duly recorded."

The rule *seems* to be that a *bona fide* purchaser of a mortgage for value without notice of a junior mortgage, who records his assignment, is entitled to priority over a prior unrecorded mortgage of which his assignor had full knowledge.

* Received too late for insertion in proper place.—[REPR.

A vendee in possession of real estate under an executory contract of sale is to a certain extent the equitable owner of the property, but, while a mortgage given by him which contains no covenants of title or for further assurance has priority over a mortgage given subsequently and recorded before the mortgagor receives his deed, the first mortgage is a prior lien only to the extent of the interest he had in the property when said mortgage was given.

Action for the foreclosure of a mortgage on real estate.

Clarence Stetson, for plaintiff.

Geo. C. Morehouse, for defendant Cloyes.

James Coupe, for defendants Nellis, Amos & Swift.

EMERSON, J. On April 21, 1911, one James B. Turnbull was the owner of lot 5 on James street in the city of Utica and on that day he entered into a contract in writing to sell said lot to defendant Delpho for the sum of $1,000, of which sum $100 was to to paid down and the balance on or before November 1, 1911. Said sum of $100 was paid on the execution of the contract and Delpho went into possession of the property. Delpho was a builder and for some time had been engaged in business with one Wadsworth L. Goodier, a lawyer and real estate man in that city, under an arrangement whereby Delpho was to purchase land and build thereon, the money therefor to be furnished by Goodier, and when the property was sold the profits to be equally divided between them, and the lot in question was purchased by Delpho for that purpose and in accordance with that agreement.

Prior to the execution of said contract Delpho had built a house on an adjoining lot and used the lot in

question for a tool-house and for the deposit of some building material and the same was on the lot at the time the contract was made and continued thereon until used in the construction of the house later built thereon. Delpho commenced the construction on said lot No. 5 of a two-family flat on or about September 12, 1912, and the frame of the building was up on November 29, 1912, on which day the final payments were made on the contract and a deed of the lot executed and delivered by Turnbull.

The money to pay for this lot and build the house was furnished by Goodier, who for some time had been in charge of some investments for the plaintiff and acted as her attorney in that regard. On June 11, 1911, Goodier had in his possession the sum of $3,048 belonging to the plaintiff which was the proceeds of some investment that he held for her and he thereupon procured Delpho to execute a bond and mortgage to plaintiff on lot No. 5 aforesaid for the sum of $3,000 on the representation that it was to secure a loan he had made, which bond bears date June 10, 1911, and purports to have been acknowledged before Goodier as a notary public on that day, and which mortgage bears date June 14, 1911, and purports to have been acknowledged before Goodier as such notary on that day, which bond and mortgage Goodier thereupon delivered to plaintiff upon the representation that it was a loan of the money in his hands so belonging to her and was thereupon recorded in the Oneida county clerk's office. The final payments were made on the contract on or about November 29, 1912, and on that date Turnbull, the vendor, executed a deed to Delpho of the property. Goodier was at the time indebted to Nellis, Amos & Swift for lumber furnished on other jobs and on the job in question approximating in amount $6,000 and

on the delivery of the deed to Delpho applied to him to execute another mortgage on the property for $4,500, stating that with the proceeds he would take up the mortgage so held by plaintiff. Delpho accordingly executed and delivered to Goodier such a mortgage which stated that it was given for the purchase price of the lot. Said mortgage and bond were both dated and acknowledged on that day and the mortgage was recorded in Oneida county clerk's office November 30, 1912, at 10:45 A. M.

On or about the date last mentioned Goodier assigned said bond and mortgage to Nellis, Amos & Swift by assignment dated on that day but acknowledged two days later, and in said assignment covenanted that the sum of $4,500 was then unpaid on said mortgage. This assignment was duly recorded in Oneida county clerk's office on December 12, 1912, and was made for the purpose of securing payment to Nellis, Amos & Swift of the aforesaid indebtedness. At the time said assignment was made the amount due Nellis, Amos & Swift for lumber furnished on other jobs was $4,769.12 and on the job in question the sum of $998.17. Thereafter Nellis, Amos & Swift furnished further lumber for use on said job to the amount of $364.85, making a total of lumber used in this building of $1,363.02. Said assignment was made under an agreement that Nellis, Amos & Swift should dispose of said mortgage and if they did not succeed in getting the face of the same the difference should be credited back by them to Goodier, and at the time of such assignment Goodier, who was also acting as attorney for Nellis, Amos & Swift, produced an abstract of title showing that Delpho was the owner of the property and the mortgage of $4,500 in question but which did not show the existence of the Gray mortgage in suit, and Nellis,

Amos & Swift had no actual knowledge of that mortgage. On August 18, 1913, Nellis, Amos & Swift assigned said bond and mortgage to the defendant Anson G. Cloyes by assignment dated and acknowledged that day and recorded in Oneida county clerk's office August 22, 1913. At the time of such assignment Nellis, Amos & Swift produced to said Cloyes the search aforesaid which did not show the existence of the Gray mortgage, and also an affidavit from Delpho that it was a purchase money mortgage, which affidavit was made by Delpho upon the belief that Goodier had paid up the Gray mortgage out of the proceeds of the mortgage in question. Cloyes at the time of said assignment had no actual notice of the Gray mortgage and he paid to Nellis, Amos & Swift for the same the sum of $4,000 and thereupon they credited back to Goodier the balance of the mortgage above that sum. Later on Delpho executed a second mortgage on the premises to Nellis, Amos & Swift for the sum of $703.50 which mortgage bore date December 1, and purported to be acknowledged December 3, 1913. This mortgage was recorded in Oneida county clerk's office December 3, 1913, and was given for the deficiency in the mortgage arising on said sale to Cloyes and so credited back to Goodier, together with accumulated interest on said mortgage. At the time this latter mortgage was executed Delpho was not the owner of the property but title was transferred back to him on November 24, 1914, and he has since remained such owner.

About the last of October or first of November, 1914, Goodier absconded from the county and in the month of January, 1915, the plaintiff commenced this action to foreclose her said mortgage for $3,000.

The defendants interpose as a defense the claim that the mortgage so assigned to Cloyes has priority over

the one given to plaintiff and this presents the main issue in the case. The defendants' mortgage was not given to secure any part of the purchase price of the mortgaged premises and, therefore, was in no sense of the word a purchase money mortgage although it was stated to be such. The plaintiff's mortgage was first in point of time and, as the mortgagee then possessed an interest in the property that was capable of being assigned and conveyed, it was a valid mortgage security. 4 Kent Com. 144; Thomas Mort. (3d ed.) § 77; *Titcomb* v. *Fonda, J. & G. R. R. Co.,* 38 Misc. Rep. 630, 632.

Goodier, the defendants' assignor, negotiated the execution of the plaintiff's mortgage and, as he had full knowledge of all the facts, the defendants' mortgage in his hands was subordinate to the lien of the one held by plaintiff. *Crane* v. *Turner,* 7 Hun, 357, 361; 67 N. Y. 437; *Westbrook* v. *Gleason,* 79 id. 23.

It is also a well settled rule of law that the assignee of a mortgage takes only the title of his assignor and, therefore, a mortgage in the hands of an assignee is subject to the same equities and defenses that could have been interposed against the assignor. *Merchants' Bank* v. *Weill,* 29 App. Div. 114; *Ingraham* v. *Disborough,* 47 N. Y. 421; *Trustees Union College* v. *Wheeler,* 61 id. 88, 105; *Greene* v. *Warnick,* 64 id. 220; *Crane* v. *Turner,* 67 id. 437; *Davis* v. *Bechstein,* 69 id. 440; *Rapps* v. *Gottlieb,* 142 id. 164; *Stevenson Brewing Co.* v. *Iba,* 155 id. 224.

It follows, therefore, that unless the defendants' mortgage is saved by the provisions of the recording act the issue involved must be decided in favor of the plaintiff. The recording act provides that every unrecorded conveyance of real property shall be void as against any subsequent purchaser in good faith and

for a valuable consideration whose conveyance is first duly recorded. A mortgage is held to be a conveyance and an assignee thereof a purchaser within the meaning of this statute. Real Prop. Law, §§ 290, 291; *St. John* v. *Spalding,* 1 T. & C. 483; *Bacon* v. *Von Schoonhoven,* 87 N. Y. 446, 450.

To what extent the assignee of a mortgage is protected by recording his assignment has been the subject of much discussion in the books and at first blush the rules laid down in some of the cases would seem to be hopelessly inconsistent and irreconcilable. But an analysis of these various opinions will show that much which has been said had reference to the particular facts then before the court or were loose utterances which were not essential to the decision. Thus there is a line of cases in which it is said that the only purpose of the statute requiring assignments of mortgages to be recorded was to regulate the relation to each other of successive assignees of the same mortgage. *Greene* v. *Warnick,* 64 N. Y. 220, 227; *Crane* v. *Turner,* 67 id. 437; *Westbrook* v. *Gleason,* 79 id. 23.

An examination of these cases, however, will show that in none of them did this question arise. In *Greene* v. *Warnick* the assignee of the mortgage was not a subsequent purchaser within the meaning of the recording act; in *Crane* v. *Turner* the assignee was charged with knowledge of the rights of the adverse party (see case reported below, 7 Hun, 357); and in *Westbrook* v. *Gleason* the subsequent mortgage was taken with full knowledge of the prior unrecorded mortgage and before the assignment of the former mortgage was recorded the latter was placed on record.

The rule seems to be that a *bona fide* purchaser for value, without notice of a junior mortgage, who

records his assignment is entitled to priority over a prior unrecorded mortgage of which his assignor had full knowledge. *Fort* v. *Burch,* 5 Den. 187; *Westbrook* v. *Gleason,* 79 N. Y. 23; *Decker* v. *Boice,* 83 id. 215; *Clark* v. *Mackin,* 30 Hun, 412, 413.

As the defendant Cloyes was a *bona fide* purchaser of the Goodier mortgage for value without notice he, by recording his assignment, obtained priority over the plaintiff's mortgage unless the same had been previously duly recorded. This mortgage was, as we have seen, in fact recorded before the mortgagor obtained legal title to the property and the question is thus presented whether this was a due record within the meaning of the recording act.

The purpose of recording conveyances is to furnish notice thereof to subsequent purchasers and incumbrancers. The proceeding is entirely statutory and, hence, unless the instrument is of such a character as to convey an interest in real estate and is executed and recorded in the manner prescribed by statute, such a record is of no avail. *Mutual Life Ins. Co.* v. *Dake,* 87 N. Y. 263; *Frost* v. *Beekman,* 1 Johns. Ch. 300; *Dey* v. *Dunham,* 2 id. 189; *James* v. *Morey,* 2 Cow. 247, 316; *Gillig* v. *Maass,* 28 N. Y. 191; *Fryer* v. *Rockefeller,* 63 id. 269, 272, 273; *Howells* v. *Hettrick,* 13 App. Div. 366.

It was said by the chancellor in *Farmer's Loan & Trust Co.* v. *Maltby,* 8 Paige, 362, that the record of a mortgage on lands given while the mortgagor possessed only an equitable interest therein, but who afterwards obtained a legal title thereto, was not notice to a subsequent purchaser as he was not bound to search for mortgages prior to the time that his grantor acquired his legal title. The case, however, does not seem to have been decided upon this point as

the proof showed that the parties who subsequently acquired deed to the property were in possession when the mortgagee was charged with notice of their rights. This remark of the chancellor does not seem to have been followed by the courts in later years. In *Crane v. Turner,* Judge Follett said at Special Term that any interest in real estate which is the subject of sale is also the subject of a mortgage and that as a vendee in possession under a contract of sale possessed an equitable interest in the property he could mortgage his equitable interest and that such a mortgage was legally recordable and as such was duly recorded against subsequent incumbrances. This case, however, was not decided upon that point as the evidence showed the subsequent mortgagee was charged with knowledge of the equitable title of the mortgagor. *Crane* v. *Turner,* 7 Hun, 357, 358, 361; affd., 67 N. Y. 437, 440.

In *Tefft* v. *Munson,* 57 N. Y. 97, the Court of Appeals held that the record of a mortgage containing covenants of seizin was constructive notice to a subsequent purchaser in good faith even though the mortgagor had no title when the mortgage was executed and recorded, but afterwards. acquired title to the property. This rule rests upon the theory of estoppel as, the mortgagor being estopped by his covenants from claiming any after-acquired title as against the lien of the mortgage, all subsequent purchasers were privies in estate and likewise bound. This case is cited with approval in *Lomax* v. *Pickering,* 173 U. S. 30.

Following *Tefft* v. *Munson* it was held that the record of a mortgage containing no covenants of title or further assurance was a nullity when the mortgagor had no title at the time the mortgage was executed and

recorded, but afterwards acquired such title. *Donovan* v. *Twist,* 85 App. Div. 130; 105 id. 171.

. But the cases all seem to agree that if the mortgagor possesses an equitable interest at the time the mortgage is executed such an equitable interest is subjected to the lien of the mortgage and, following the rule laid down in *Tefft* v. *Munson* and *Donovan* v. *Twist,* the record of such a mortgage would constitute notice to a subsequent purchaser or incumbrancer of the interest thus mortgaged. Thus it is held that although a deed has no seal the grantee becomes an equitable owner and the record is notice of such ownership. *Todd* v. *Union D. S. Inst.,* 118 N. Y. 337; *Grandin* v. *Hernandez,* 29 Hun, 401; *Dana* v. *Jones,* 91 App. Div. 497, 500.

And any equitable interest may be mortgaged and a record of the mortgage is notice to subsequent purchasers or incumbrancers of such interest. *Tarbell* v. *West,* 86 N. Y. 280, 287, 289; *Edwards* v. *McKernan,* 55 Mich. 524, 525.

Delpho, the mortgagor, was a vendee in possession, having made a payment upon his contract. He was, therefore, to a certain extent the equitable owner of the property and the mortgage that he gave was duly recorded and has priority over the subsequent mortgage held by defendant Cloyes. The plaintiff's mortgage, however, contains no covenants of title or further assurance and hence is a prior lien only to the extent of the interest which the mortgagor then possessed in the property. *Jackson* v. *Littell,* 56 N. Y. 108; *Donovan* v. *Twist,* 85 App. Div. 130; *Mayer* v. *Burr,* 133 id. 604.

. The general rule is that a vendee in possession under an executory contract to purchase is regarded in law as the equitable owner of the property. He is

the debtor of the vendor for the amount of the unpaid purchase price and the vendor holds the legal title as his trustee, having a lien thereon for the balance of the purchase price unpaid. *Moore* v. *Burrows,* 34 Barb. 173, 174; *Hathaway* v. *Payne,* 34 N. Y. 103; *Pelton* v. *Westchester Fire Ins. Co.,* 77 id. 605, 607; *Sample* v. *Lyons,* 59 App. Div. 457; *Ferry* v. *Stephens,* 66 N. Y. 321, 325.

I do not, however, understand from this rule that the vendee at once becomes the equitable owner of the whole property, but rather that such ownership exists to the extent that he makes payments on the contract. In *Rose* v. *Watson,* 10 H. L. Cas. 672, the lord chancellor said each payment made by a vendee on an executory contract of sale was a part performance and to the extent of the payments so made transferred in equity a corresponding portion of the estate, and in the same case Lord Cranworth said that when the vendee paid the entire contract price he was in equity considered as the owner of the estate and that when he paid a part only the vendor became a trustee for him to the extent of the amount thus paid.

Judge Vann, in *Elterman* v. *Hyman,* 192 N. Y. 113, 119, cites the above opinions with approval. He further says at page 125: " Part payment creates partial ownership, and the vendee has an interest in the land itself to the extent of the payments made thereon. The contract and payment in full make him the equitable owner of all the land. The contract and payment in part make him the equitable owner *pro tanto.*" Standard elementary writers also furnish further confirmation of this rule. 1 Perry Trusts.(5th ed.), § 231; 2 Washb. Real Prop. (6th ed.), § 1039.

At the time the plaintiff's mortgage was executed only $100 had been paid on the contract and the con-

struction of the building had not been commenced. This, it seems. to me, measured the interest of the vendee at that time and was the only interest to which the lien of the mortgage attached. While later on the balance of the contract price was paid and a house was constructed thereon, the property rights thus created were after-acquired interests and did not inure to the benefit of the mortgagee in the absence of covenants of title or further assurance.

My conclusions are that the plaintiff's mortgage is a lien on the property for the sum of $100 only, that being the amount of the mortgagor's interest in the property at the time the mortgage was executed. A decree of foreclosure and sale should be made and out of the proceeds of sale the plaintiff should be paid $100 interest and costs and the balance of the proceeds of sale should be applied in payment of the mortgage held by the defendant Cloyes, together with the costs of his defense.

Judgment accordingly.